# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br><br>PARKWOOD HOSPITALITY, LLC,<br><br>     Debtor. | Case No. CIV-11-01485-HE |
| PARKWOOD HOSPITALITY, LLC,<br><br>     Appellant,<br><br>  v.<br><br>UNITED CENTRAL BANK,<br><br>     Appellee. | Bankr. Case No. 11-14863<br>(Chapter 11) |

## DEBTOR'S EMERGENCY MOTION FOR STAY PENDING APPEAL OF THE ORDER GRANTING UNITED CENTRAL BANK'S MOTION FOR RELIEF FROM STAY WITH BRIEF IN SUPPORT

PHILLIPS MURRAH P.C.
Robert J. Haupt, OBA No. 18940
Andrew R. Chilson, OBA No. 30040
Clayton D. Ketter, OBA No. 30611
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma  73102
405.235.4100 – telephone
405.235.4133 – facsimile
rjhaupt@phillipsmurrah.com
archilson@phillipsmurrah.com
cdketter@phillipsmurrah.com
ATTORNEYS FOR DEBTORS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

DEBTOR'S EMERGENCY MOTION FOR STAY PENDING APPEAL OF THE
ORDERGRANTING UNITED CENTRAL BANK'S MOTION FOR RELIEF FROM
STAY WITH BRIEF IN SUPPORT ................................................................................. 1

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .................................................................................................................. 2

BRIEF IN SUPPORT ......................................................................................................... 6

     A.    The Court Should Grant a Stay of the Order Lifting the Automatic Stay..... 6

          i.    The Debtor Will Be Irreparably Harmed if the Order Lifting the
                Automatic Stay is Not Stayed ........................................................... 7

          ii.    The Debtor has a Substantial Possibility of Success on Appeal ........ 8

          iii.    The Harm to the Debtor Outweighs the Minimal Potential Harm to
                Non-Moving Parties ......................................................................... 13

          iv.    The Public Interest Favors a Stay..................................................... 14

     B.    No Bond is Required Because the Stay of the Order Lifting the Automatic
          Stay Will Have Limited Adverse Financial Impact .................................... 14

NEED FOR EMERGENCY RELIEF .............................................................................. 16

CONCLUSION ................................................................................................................... 17

00606414                                                          24703.78001

# TABLE OF AUTHORITIES

## CASES

*Acands, Inc. v. Travelers Cas. & Sur. Co.*,
  435 F.3d 252 (3d Cir. 2006); ............................................................. 12

*ACC Bondholder Group v. Adelphia Commc'ns Corp.*,
  361 B.R. 337, 351 (S.D.N.Y. 2007) ..................................................... 15

*In re Canerdy*,
  05-1247-DWH, 2010 WL 2696811, at *3 (Bankr. N.D. Miss. July 7, 2010).......... 9

*In re Darrell Creek Assocs., L.P.*,
  187 B.R. 908 (Bankr. D.S.C. 1995) ..................................................... 12

*In re DB Capital Holdings, LLC*,
  454 B.R. 804 (Bankr. D. Colo. 2011)................................................... 12

*de la Fuente v. DCI Telecomm., Inc.*,
  269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003), *aff'd*, 82 Fed. Appx. 723 (2d Cir.
  2003)) ......................................................................................... 15

*Dominion Video Satellite, Inc. v. Echostar*,
  356 F.3d 1256, 1262 (10th Cir. 2004) ................................................. 7

*In re Graves*,
  212 B.R. 692 (B.A.P. 1st Cir. 1997) ................................................... 12

*In re Huang*,
  275 F.3d 1173 (9th Cir. 2002) .......................................................... 12

*In re John Clay & Co., Inc.*,
  43 B.R. 797 (Bankr. D. Utah 1984 ..................................................... 9

*Kelvin v. Avon Printing Co. (In re Kelvin Publ'g, Inc.)*,
  72 F.3d 129, 1995 WL 734481, at *6 (6th Cir. Dec. 11, 1995) ................. 8, 9

*In re Lang*,
  414 F.3d 1191, 1201 (10th Cir. 2005) ................................................. 7

*In re Las Vegas Monorail Co.*,
  429 B.R. 317, 341 (Bankr. D. Nev. 2010) ............................................ 11

*Miami Int'l Realty Co. v. Paynter*,
   807 F.2d 871 (10th Cir. 1986) ............................................................ 15

*Mullane v. Cent. Hanover Bank & Trust co.*,
   339 U.S. 306, 314 (1950) .................................................................... 9

*Ostano Commerzanstalt v. Telewide Sys., Inc.*,
   790 F.2d 206, 207 (2d Cir. 1986) ...................................................... 12

*In re Pease*,
   195 B.R. 431 (Bankr. D. Neb. 1996) .................................................. 12

*Population Inst. v. McPherson*,
   797 F.2d 1062, 1081 (D.C. Cir. 1986) ................................................ 7

*In re Powers*,
   170 B.R. 480 (Bankr. D. Mass. 1994) ................................................ 12

*In re Sphere Holding Corp.*,
   162 B.R. 639, 644 (E.D.N.Y. 1994) .................................................... 15

*State Bank of Spring Hill v. Bucyrus Grain Co. (In re Bucyrus Grain Co.)*,
   127 B.R. 52, 54 n.4 (D. Kan. 1991) .................................................... 15

*Suprema Specialties, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   330 B.R. 93, 96 (S.D.N.Y. 2005) ........................................................ 15

*In re United Merchants & Mfrs., Inc.*,
   138 B.R. 426 (D. Del. 1992) ............................................................... 16

*In re W. Real Estate Fund, Inc.*,
   83 B.R. 52, 54 (Bankr. W.D. Okla. 1988) ........................................... 11

24703.78001

## STATUTES

11 U.S.C. § 362 (d) ...................................................................................... 8

11 U.S.C. § 362(d)(2) ................................................................................. 9

11 U.S.C. § 552 ......................................................................................... 10

11 U.S.C. § 552(b) ...................................................................................... 9

11 U.S.C. § 1107 ......................................................................................... 2

11 U.S.C. § 1108 ......................................................................................... 2

## RULES

Fed. R. Bankr. P. 8005 ..................................................................... 2, 6, 15, 16

24703.78001

**DEBTOR'S EMERGENCY MOTION FOR STAY PENDING**
**APPEAL OF THE ORDER GRANTING UNITED CENTRAL**
**BANK'S MOTION FOR RELIEF FROM STAY WITH BRIEF IN SUPPORT**

Parkwood Hospitality, LLC (the "Debtor") hereby moves (the "Motion") this Court on an emergency basis to stay the order of the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court") granting relief from the automatic stay and to reinstate the stay as to United Central Bank (the "Lender") pending resolution of this appeal. In support thereof, the Debtor would show the Court as follows:

**PRELIMINARY STATEMENT**

1.     The Debtor submits that this case presents the classic situation in which a stay pending appeal is appropriate:

- <u>Irreparable Harm</u>. On December 1, 2011, the Debtor was notified that the Lender was planning to commence proceedings as early as December 2, 2011 in Texas state court seeking the appointment of a receiver over the Debtor's property on an emergency basis, pending the Lender's foreclosure of such property. The appointment of such a receiver would deprive the Debtor of its primary asset and sole source of revenue, effectively destroying the Debtor's chance at reorganization and mooting this appeal.

- <u>Likelihood of Success on the Merits</u>. The Debtor is likely to succeed in its appeal as the Bankruptcy Court's order was procedurally improper, violated due process rights, went against the agreement of the parties, is contrary to binding precedent, and misapplied non-binding authority.

1

- <u>Harm to Non-Appealing Parties</u>.  Reinstituting the stay will benefit substantially all parties in interest.  If the Lender is successful in seeking to take control of the Debtor's property, the only parties that will receive any recovery will be the Lender and two other first priority secured creditors.  All other secured, unsecured, priority, and administrative claimants will receive nothing.  Conversely, if the appeal is successful and the Lender is given the opportunity to reorganize, all parties in interest, including unsecured creditors, will receive a recovery.  Further, the stay will not cause any distinct harm to the Lender as its collateral is secure and not declining in value.

- <u>The Public Interest</u>.  Granting a stay pending appeal serves the public interest by ensuring due process of law and supporting the Bankruptcy Code's mandate of maximizing returns for all parties in interest.

2.      Seeking a stay from this Court is appropriate pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") given the Bankruptcy Court's denial of a stay pending appeal after finding that its order was not likely to be overturned on appeal.

## <u>BACKGROUND</u>

3.      On September 2, 2011 (the "Petition Date"), the Debtor filed a voluntary petition with the Bankruptcy Court pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  Pursuant to Bankruptcy Code sections 1107 and 1108, the

Debtor has retained possession of its assets as a debtor in possession and is continuing to operate its business.

4.     The Debtor is a hospitality company headquartered in Duncan, Oklahoma whose primary asset is a full-service Holiday Inn hotel located in Frisco, Texas (the "Hotel"). The Lender partially financed the Debtor's acquisition of the Hotel, and currently holds a second priority security interest in the Hotel.

5.     On the Petition Date, the Debtor filed a motion seeking to use the Lender's cash collateral [11-14863, Doc. 8] (the "Cash Collateral Motion").   Prior to the interim hearing on the Cash Collateral Motion, the Debtor and the Lender reached an agreement, which included, *inter alia*, the payment by the Debtor of $7,500 per week to the Lender as adequate protection.   A final hearing on the Cash Collateral Motion was set for October 19, 2011.

6.     On September 20, 2011, the Lender filed a motion seeking relief from the automatic stay [11-14863, Doc. 34].   That same day, the Lender filed an amended motion seeking relief from the automatic stay [11-14863, Doc. 35] (the "Stay Motion").   The Stay Motion alleged that relief from the automatic stay should be granted (i) because the Debtor lacked a reasonable prospect of reorganization and (ii) for cause because of the Debtor's supposed lack of funds.   No other arguments in support of relief from stay were presented in the Stay Motion.

7.     On October 5, 2011, the Debtor filed its objection to the Stay Motion [11-14863, Doc. 58], specifically addressing those legal arguments made in the Stay Motion.

8.      Prior to the hearing on the Cash Collateral Motion and the Stay Motion, the Debtor and the Lender agreed to the form of a final cash collateral order to be submitted if the Stay Motion was denied.

9.      At the October 19, 2011 hearing, the Lender introduced multiple new legal theories and cases that were never mentioned in the Stay Motion or in any other pleading. Specifically, the Lender raised arguments that: (i) cause existed to lift the automatic stay due to a lack of adequate protection, including lack of ability to use cash collateral; and (ii) the stay should be lifted due to a provision found in a prepetition forbearance agreement between the Lender and the Debtor.  *See* Hr'g Tr., 11-14863, at 146:20-159:5 (Oct. 19, 2011). Despite multiple objections by the Debtor, the Bankruptcy Court allowed the Lender to introduce such extraneous arguments and evidence.  *See* Hr'g Tr., 11-14863, at 26:13-27:4, 46:10-12, 73:3-24, 160:15-161:3 (Oct. 19, 2011).

10.     Upon the conclusion of the hearing on the Stay Motion, the Court instructed that it was taking the Stay Motion under advisement pending its consideration of the additional materials provided by the Lender for the first time during its closing arguments. *See* Hr'g Tr. 11-14863, at 173:18-174:1 (Oct. 19, 2011).  Although the Court permitted the Debtor to submit additional cases, the Court expressly prohibited the Debtor from briefing the issues that had only then been asserted by the Lender.  *See* Hr'g Tr., 11-14863, at 174:14-22 (Oct. 19, 2011).  Also, because the Debtor was not given notice of or a chance to review the Lender's unpled arguments, the Debtor did not have an opportunity to argue or present evidence in opposition to the Lender's newly asserted theories and claims.

11.     At a hearing on November 9, 2011, the Court announced that it would be granting the Stay Motion on the apparent grounds that: (i) the Lender was not adequately

4

protected; and (ii) the Debtor's prepetition waiver of the automatic stay was enforceable. *See* Ruling Tr., 11-14863, at 17:18-18:4 (Nov. 9, 2011).  The Court also entered an order denying the Cash Collateral Motion.

12.     On November 10, 2011 the Debtor filed a Motion for Reconsideration of this Court's Order Granting United Central Bank's Amended Motion for Relief from Stay and the Debtor's Motion for Orders Authorizing Use of Cash Collateral [11-14863, Doc. 90] (the "Reconsideration Motion").

13.     On November 15, 2011, the Court entered its order granting the Stay Motion [11-14863, Doc. 94] (the "Order Lifting the Automatic Stay").

14.     On November 28, 2011, the Debtor filed an emergency motion to stay the Order Lifting the Automatic Stay pending the resolution of the Reconsideration Motion and, if necessary, an appeal of the Order Lifting the Automatic Stay (the "Bankruptcy Court Request for Stay") [11-14863, Doc. 102].

15.     On November 28, 2011, the Lender filed an objection to the Reconsideration Motion [11-14863, Doc. 104].  On November 29, 2011, the Lender filed an objection to the Bankruptcy Court Request for Stay.

16.     On December 1, 2011, the Lender notified the Debtor that it was planning to file an emergency request in Texas state court for the appointment of a receiver over the Hotel.  As soon as possible after learning of the Lender's plans, the Debtor attempted to contact the Bankruptcy Court regarding resolution of the Bankruptcy Court Request for Stay. Unfortunately, the Bankruptcy Court was unable to consider the Bankruptcy Court Request for Stay in an expedited manner sufficient to protect the Debtor and other parties in interest.

17.     On December 2, 2011, facing imminent and irreparable harm, the Debtor was forced to withdraw the Reconsideration Motion and file a Notice of Appeal of the Order Lifting the Automatic Stay with the Tenth Circuit Bankruptcy Appellate Panel.

18.     On December 6, 2011, the Lender elected to have the appeal transferred from the Tenth Circuit Bankruptcy Appellate Panel to this Court.

19.     On December 7, 2011, the Bankruptcy Court denied the Bankruptcy Request for Stay [11-14863, Doc. 118], stating that it did not believe the Debtor's appeal was likely to be successful.   Also on December 7, 2011, the Bankruptcy Court found that the Reconsideration Motion was withdrawn [11-14863, Doc. 120].

## BRIEF IN SUPPORT

20.     The Debtor requests that the Court enter an order imposing a stay upon the effectiveness of the Order Lifting the Automatic Stay and reinstating the automatic stay as to the Lender pending resolution of this appeal.   Such a stay is necessary to stop the Lender's state court action, which threatens to moot this appeal and destroy the Debtor's business operations.

**A.     The Court Should Grant a Stay of the Order Lifting the Automatic Stay.**

21.     In determining whether to issue a stay pending appeal pursuant to Bankruptcy Rule 8005, courts consider: (1) whether the movant will incur irreparable harm if the court denies the motion to stay; (2) the movant's likelihood of success on appeal; (3) the likelihood that others will be substantially harmed if the court grants the stay; and (4) the public interest in granting a stay.  *In re Lang*, 414 F.3d 1191, 1201 (10th Cir. 2005).

22.     Here, all four requirements for a stay pending appeal are satisfied. Accordingly, the Court should grant the Debtor's request for a stay of the Order Lifting the Automatic Stay pending resolution of this appeal.

### i.     The Debtor Will Be Irreparably Harmed if the Order Lifting the Automatic Stay is Not Stayed.

23.     Staying the Order Lifting the Automatic Stay is necessary to protect the Debtor from irreparable harm, which exists when the injury is certain and great.  *See Dominion Video Satellite, Inc. v. Echostar*, 356 F.3d 1256, 1262 (10th Cir. 2004).  Here, irreparable harm is present as the appointment of a receiver and foreclosure of the Hotel will deprive the Debtor of its primary asset and only significant source of income. Without a source of income, the Debtor will be unable to continue as a viable entity. Thus, failure to stay the Lender's action is effectively a death sentence to the Debtor as a going concern.

24.     The commencement of an action to appoint a receiver may also permit the Debtor's franchisor, Holiday Hospitality Franchising, Inc., to immediately terminate the Debtor's Holiday Inn franchise agreement.  Losing the franchise would be devastating to the value of the Hotel and would result in a drastic drop in the Debtor's revenues.

25.     Further, courts have found that irreparable harm exists sufficient to permit a stay when the failure to grant a stay could render the appeal moot.  *See Population Inst. v. McPherson*, 797 F.2d 1062, 1081 (D.C. Cir. 1986) (finding that appellant "will suffer irreparable injury" if its appeal is rendered moot).  If the Debtor lacks the ability to

continue to reorganize, this appeal is moot.  This will likely be the case if a receiver takes over the Debtor's primary source of income.

26.     Thus, without a stay, the Debtor faces the mootness of its appeal, the loss of its chief operating assets, the loss of its franchise, the termination of this case, and the complete destruction of the Debtor as a going concern.   Such irreparable harm is sufficient to warrant the granting of a stay.

### ii.     The Debtor has a Substantial Possibility of Success on Appeal.

27.     The Debtor has a substantial possibility of success on appeal because (1) the Order Lifting the Automatic Stay deprived the Debtor of due process; (2) given that the Lender had already agreed that its interests were adequately protected and that the Debtor could use cash collateral, the Bankruptcy Court improperly found that there was a lack of adequate protection; (3) the Bankruptcy Court improperly found a prepetition waiver of the automatic stay was enforceable; and (4) the Debtor was not given the opportunity to introduce evidence on the issue of enforceability.

- <u>The Order Lifting the Automatic Stay was Not Properly Noticed</u>

28.     First, the Order Lifting the Automatic Stay was wrongly granted because the Debtor and third parties were not given the notice required by Bankruptcy Code section 362(d).  Section 362(d) provides that relief from the stay may only be granted "after notice and a hearing."  11 U.S.C. § 362(d).  Procedural due process requires "adequate notice of the legal theory under which the plaintiff or the court is proceeding."  *Kelvin v. Avon Printing Co. (In re Kelvin Publ'g, Inc.)*, 72 F.3d 129, 1995 WL 734481, at *6 (6th Cir. Dec. 11, 1995) (finding violation of due process when party did not have prior notice of legal

theories presented to court); *see also Mullane v. Cent. Hanover Bank & Trust co.*, 339 U.S. 306, 314 (1950) ("an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *In re John Clay & Co., Inc.*, 43 B.R. 797 (Bankr. D. Utah 1984) (finding that party was not accorded procedural due process of law when court considered new theories of law not originally pled in the motion seeking relief); *In re Canerdy*, 05-1247-DWH, 2010 WL 2696811, at *3 (Bankr. N.D. Miss. July 7, 2010) (refusing to consider arguments not presented in the pleadings).

29.     The conduct of counsel for the Lender at the hearing on the Stay Motion was precisely the sort of ambush that due process and the pleading requirements are meant to prevent.  The Stay Motion argues that the stay should be lifted (i) under Bankruptcy Code section 362(d)(2) because the Debtor could not reorganize due to a lack of sufficient revenues to pay obligations, inability to satisfy the absolute priority rule, and the Lender's right to credit bid; and (ii) for cause due to the Debtor's inability to pay expenses as they come due.  That is the full extent of the Lender's argument.  As expected, the Debtor limited its research and response to only those issues raised by the Stay Motion.

30.     It therefore came as a shock to the Debtor when, during closing arguments, the Lender raised completely new theories concerning why the automatic stay should be lifted.  Specifically, the Lender argued that there was a lack of adequate protection due to the effect of Bankruptcy Code section 552(b) and that the Debtor's prepetition waiver of the automatic stay was enforceable.  The Lender also submitted to the Court cases in support of these arguments.  The Stay Motion fails to make even a single mention of section 552, prepetition

waiver, or any of the cases submitted by the Lender at closing. Despite the Debtor's objection, the Bankruptcy Court permitted such unpled arguments and materials to be introduced, and it was these new theories that served as the basis of the Order Lifting the Automatic Stay. By depriving the Debtor of prior notice or the opportunity to brief or argue these issues, the Bankruptcy Court's order deprived the Debtor of due process and is therefore likely to be overturned.

- <u>Cash Collateral And Adequate Protection Had Been Resolved By Agreement</u>

31. Second, the Order Lifting the Automatic Stay upon a finding of lack of adequate protection is likely to be overturned because the Lender had consented to the use of cash collateral and agreed that its interests were adequately protected. The Court's order was based on the theory that the Debtor lacked the financial ability to reorganize because it could not provide adequate protection for the use of cash collateral, which cash collateral was the primary source of the Debtor's funding. However, remarkably, the Lender had already represented to the Bankruptcy Court that if the stay was not lifted, it would consent to the form of a final cash collateral order, which order provided that the Lender's interests were not adequately protected. *See* Hr'g Tr., 11-14863, at 5:3-6:6 (Oct. 19, 2011). Thus, at the hearing, the parties represented to the Bankruptcy Court that cash collateral was not at issue. The Court's finding that the Debtor could not use cash collateral and that the Lender was not adequately protected conflicts with the clear facts of the current matter. Accordingly, the Court's order is likely to be overturned.

32. Further, even if the parties had not agreed to the use of cash collateral, the only evidence produced at the hearing supported that the Lender's collateral was stable and

unlikely to decline in value in the foreseeable future, thereby negating any need for adequate protection.  Not only did the Lender fail to file an objection to the Cash Collateral Motion, but it produced no evidence at the hearing to rebut testimony presented by the Debtor that the value of the Hotel was stable and had not declined in value since the Petition Date.

33.     Relatedly, the Bankruptcy Court found that a replacement lien alone could not serve as adequate protection.   Not only was this finding irrelevant given the parties' agreement and the additional adequate protection being provided (including cash payments), but such finding contradicted binding precedent.  *See, e.g.*, *In re W. Real Estate Fund, Inc.*, 83 B.R. 52, 54 (Bankr. W.D. Okla. 1988) (allowing use of cash collateral when rents were to be used for upkeep of property); *see also In re Las Vegas Monorail Co.*, 429 B.R. 317, 341 (Bankr. D. Nev. 2010) (noting that a debtor's use of cash collateral to maintain properties from which rents are being generated is a sufficient form of adequate protection).  As the cash collateral was being either entirely reinvested in the property or distributed to the Lender, there was no diminution in the Lender's position and the Lender was therefore adequately protected.  Unfortunately, given the procedural deficiencies, the Debtor was never given the opportunity to explain these important points.

- The Bankruptcy Court Improperly Enforced a Prepetition Waiver of the Automatic Stay

34.     The Court's enforcement of a prepetition waiver of the automatic stay is also likely to be overturned.  The only court within the Tenth Circuit to address this issue has found that prepetition waivers of the automatic stay are *per se* unenforceable.  *See, e.g.*, *In re DB Capital Holdings, LLC*, 454 B.R. 804 (Bankr. D. Colo. 2011); *see also In re Graves*, 212 B.R. 692 (B.A.P. 1st Cir. 1997); *Ostano Commerzanstalt v. Telewide Sys.*,

*Inc.*, 790 F.2d 206, 207 (2d Cir. 1986); *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252 (3d Cir. 2006); *In re Huang*, 275 F.3d 1173 (9th Cir. 2002); *In re Pease*, 195 B.R. 431 (Bankr. D. Neb. 1996).  Without being briefed on the issue, the Bankruptcy Court took it upon itself to directly contradict these well-reasoned cases.  As the Bankruptcy Court's decision was both procedurally and legally incorrect, it is likely to be overturned.

- <u>The Bankruptcy Court Failed to Give the Debtor the Opportunity to Produce Evidence on the Enforceability of the Prepetition Waiver of the Automatic Stay</u>

35.    Assuming arguendo that the Bankruptcy Court was correct in finding that a prepetition waiver of the automatic stay can be enforceable, the Bankruptcy Court's order is still likely to be overturned because the Debtor was not given the opportunity to produce evidence on the matter.  The test employed by the Bankruptcy Court for determining the enforceability of a prepetition waiver requires an evidentiary hearing. *See In re Powers*, 170 B.R. 480 (Bankr. D. Mass. 1994); *In re Darrell Creek Assocs., L.P.*, 187 B.R. 908 (Bankr. D.S.C. 1995).  The Debtor was never given the opportunity to present evidence in opposition to the enforceability of the prepetition waiver, as the Debtor did not even know it was at issue until the Lender's closing arguments.  Thus, even had the Bankruptcy Court been correct on the law, its order is still procedurally improper and is likely to be overturned on appeal.

00606414

24703.78001

   ***iii.*** ***The Harm to the Debtor Outweighs the Minimal Potential Harm to Non-Moving Parties.***

  36. In contrast to the irreparable harm faced by the Debtor, non-moving parties, including the Lender, will only suffer minimal harm if this Court stays the effectiveness of the Order Lifting the Automatic Stay.   In fact, the stay will actually benefit substantially every party in interest, including the Lender.  The Debtor's value is as a going concern, and with that in mind, the Debtor has proposed an initial plan of reorganization that will not only pay secured claims in full, but will also pay more than $664,000 to priority, administrative, and unsecured claimants.  A plan of reorganization is the only opportunity for holders of unsecured claims to recover anything.  If the Lender is permitted to appoint a receiver and foreclose on its collateral, the Lender will be the only party that receives any recovery in this case.   All other unsecured creditors, including priority and administrative claimants, will be completely wiped out, and their proposed $664,000 recovery will vanish.  Thus, granting this Motion and preserving the Debtor's opportunity to reorganize will benefit virtually every party involved in this matter.

  37. Further, any harm faced by the Lender is minimal.  At the hearing on the Stay Motion, there was uncontroverted testimony from Patrick Glenn, MAI, that the value of the Lender's collateral is stable and that there are no factors in the foreseeable future that will detrimentally impact the value of such collateral.  *See* Hr'g Tr., 11-14863, at 83:1-90:9 (Oct. 19, 2011).  As the Lender's collateral is not declining in value, the only harm the Lender stands to suffer would be to slightly delay the timing of its recovery.   Such delay is

13

   

insignificant compared to the irreparable harm that will be suffered by the Debtor and all other parties in interest if the Order Lifting the Automatic Stay is not stayed.  Accordingly, this factor weighs heavily in favor of granting a stay.

### iv.   The Public Interest Favors a Stay.

38.    The public interest favors the requested stay.  The arguments and legal theories that form the basis of the Order Lifting the Automatic Stay were not properly noticed.  Without proper notice, affected parties, including the Debtor, were denied the requisite due process necessary to enable them to protect their rights.  Due process serves as a fundamental value of the American judicial system, and protecting it is of utmost concern to the public.

39.    Further, core tenets of the Bankruptcy Code are maximizing the value of an estate and preserving going concern value.  Unless a stay is granted, neither of these will be possible even if an appeal is successful because the appointment of a receiver and foreclosure of the Debtor's property will result in only the Lender receiving a recovery. The Debtor will lose all ability to reorganize as it will be without any remaining assets. Further, over half a million dollars to be paid to other creditors will be completely wiped out.  Thus, the public interest supports a stay in favor of the Debtor.

**B.    No Bond is Required Because the Stay of the Order Lifting the Automatic Stay Will Have Limited Adverse Financial Impact.**

40.    The stay requested by the Debtor will have limited adverse impact on the Lender.  Therefore, the posting of a bond is not required.  Courts find that the posting of a bond is discretionary and does not constitute a condition precedent to obtaining a stay

pending appeal pursuant to Bankruptcy Rule 8005.  *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871 (10th Cir. 1986); *State Bank of Spring Hill v. Bucyrus Grain Co. (In re Bucyrus Grain Co.)*, 127 B.R. 52, 54 n.4 (D. Kan. 1991); *Suprema Specialties, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. (In re Suprema Specialties, Inc.)*, 330 B.R. 93, 96 (S.D.N.Y. 2005).  A court's calculation of a bond pending appeal is dependent on a finding of necessity to protect an appellee from loss resulting from the stay.  *Bucyrus Grain*, 127 B.R. at 54.  If the stay requested is not "likely to cause harm by diminishing the value of an estate or 'endanger[ing] [the non-moving parties'] interest in the ultimate recovery," no bond is required.  *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 351 (S.D.N.Y. 2007) (quoting *de la Fuente v. DCI Telecomm., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003), *aff'd*, 82 Fed. Appx. 723 (2d Cir. 2003)).  Under the present circumstances, no bond is necessary as a condition for the stay pending appeal, especially given that adequate protection payments of $7,500 per week, wired each Tuesday to the Lender's account, are already being provided to the Lender pursuant to the agreement of the parties.

41.     If the Debtor's appeal is unsuccessful, there will be no diminishment in the ultimate recovery to the Lender.  As explained above, the Lender intends to dispose of its collateral through foreclosure.  As the value of the collateral is stable, the only adverse effect a stay would have would be to slightly delay the Lender's recovery, a delay that is insufficient to require a bond.  *See In re Sphere Holding Corp.*, 162 B.R. 639, 644 (E.D.N.Y. 1994) (holding that because there is no collateral at stake that could diminish in value during the pendency of the stay, the debtor was not required to post a bond).

Any such delay will be more than made up for by the $7,500 per week adequate protection payments.

42.     Additionally, third parties will suffer no harm if the Debtor's appeal is ineffectual.   If the Lender appoints a receiver and forecloses on its collateral, the substantial majority of creditors, including administrative and priority claimants, will receive no recovery.   Conversely, if the appeal is successful and the Debtor is given the opportunity to proceed with its proposed plan of reorganization, such creditors will receive a recovery.   Thus, a stay pending appeal will actually benefit creditors.

43.     As the Lender and third parties will incur little or no damage from the stay of the Order Lifting the Automatic Stay, no bond is required.  *See In re United Merchants & Mfrs., Inc.*, 138 B.R. 426 (D. Del. 1992) (finding that a bond was unnecessary because the stay pending appeal would not harm the non-appealing parties).

### NEED FOR EMERGENCY RELIEF

44.     Emergency consideration of this Motion is necessary given the Lender's actions to have a receiver placed over the Hotel and to proceed with foreclosure. Bankruptcy Rule 8005 requires Bankruptcy Court approval or disapproval before seeking a stay from this Court.   *See* Fed. R. Bankr. P. 8005.   On December 7, 2011, the Bankruptcy Court denied the Debtor's request for a stay, stating that it believed its previous decision was correct.  Thus, this Court is free to consider this Motion.

45.     On December 2, 2011, counsel for the Debtor contacted counsel for the Lender via email concerning the relief requested in this Motion.  The Lender indicated that it objected to the relief requested in this Motion.

00606414                                                                                                    24703.78001

## CONCLUSION

WHEREFORE, the Debtor respectfully requests this Court enter an order (1) reinstating the automatic stay as to the Lender and staying the Order Lifting the Automatic Stay pending resolution of this appeal and (2) granting such other and further relief as is just and proper.

DATED: December 16, 2011.

Respectfully submitted,

PHILLIPS MURRAH P.C.

/s/ Robert J. Haupt
Robert J. Haupt, OBA No. 18940
Andrew R. Chilson, OBA No. 30040
Clayton D. Ketter, OBA No. 30611
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma  73102
405.235.4100 – telephone
405.235.4133 – facsimile
rjhaupt@phillipsmurrah.com
archilson@phillipsmurrah.com
cdketter@phillipsmurrah.com
ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2011, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Charles S. Glidewell
*Assistant U.S. Trustee*

Judy Hamilton Morse
William H. Hoch, III
*Attorneys for United Central Bank*

Jack S. Dawson
*Attorney for City of Frisco*

Jay Isreal
*Attorney for Holiday Hospitality Franchising Inc.*

I further certify that on December 16, 2011, a true and correct copy of the above and foregoing was served via U.S. Mail, postage prepaid to the following:

Jason A. Starks
Assistant Attorney General
Bankruptcy & Collections Division
P.O. Box 12548
Austin, Texas 78711-2548
*Attorney for the Texas Comptroller of Public Accounts*

Leib M Lerner
Alston & Bird LLP
333 S Hope St. 16th Floor
Los Angeles, CA 90071
*Attorney for Holiday Hospitality Franchising Inc.*

/s/ Robert J. Haupt

18

00606414                                                                                    24703.78001